CHICAGO, INDIANAPOLIS & LOUISVILLE RAILROAD CO., D/B/A MONON RAILROAD *v.* C. KENT CARTER, PERSONAL REPRESENTATIVE AND FRED HARP.

[No. 1170A187.  Filed November 3, 1971.]

*James R. Cotner, Snyder, Bunger, Cotner, Harrell & Robertson,* of Bloomington, for appellant.

*C. Kent Carter,* of Bloomington, for appellee.

HOFFMAN, C. J.—In this appeal, appellant Chicago, Indianapolis and Louisville Railroad Company (Railroad) raises two issues for the court's consideration: 1) whether the verdict of the jury is sustained by sufficient evidence from which it could have concluded that defendant was negligent; and 2) whether the verdict of the jury was contrary to law in that the jury did not apply the doctrine of contributory negligence.

The facts of this case as shown by the record before us are as follows:

On the morning of October 22, 1965, employees of appellant-Railroad were backing a 16-car train along a spur track leading from the main track into the quarry area of the Independent Limestone Company. The purpose of this backing operation was to "spot" cars for the loading of limestone.

A crew consisting of an engineer, a conductor, a fireman, a head brakeman and a flagman was assigned to the train. The conductor was stationed at the junction to the spur track and the main track some two or three miles away to watch for

"superior trains." The other four employees were aboard the train.

At the head[1] of the train were two flatcars, both piled five or six feet high with stone. Behind these was an empty flatcar upon which the flagman was standing. The flagman's duty was to watch the track ahead for anything that might be dangerous. Should he discover a dangerous situation, the flagman was to relay the appropriate signal to the head brakeman who was riding atop a loaded gondola car some three or four cars ahead of the engine. The head brakeman, in turn, was to relay the signal to the fireman riding in the cab of the engine who was then to communicate the signal to the engineer.

As the train moved along the spur into the quarry, it approached the point where an access road to one of the stone derricks crossed the tracks. Blocks of stone stacked forty to fifty feet high walled both sides of the track making the view of this road nearly impossible with the exception of the spot where the road crossed the tracks.

Suddenly, from his position behind the two loaded flatcars, the flagman saw the bed of a truck "fly off." He immediately relayed the "washout" signal which, in railroad terms, indicates to the engineer to stop the train. From his position, the train having rolled some four car lengths farther after the brakes were applied, the flagman saw fragments of a truck strewn about the immediate vicinity.

Resulting from this collision were two causes of action. One was brought by appellee—C. Kent Carter, as personal representative of Edgar L. Riddle, driver of the truck, for wrongful death of said Edgar L. Riddle. The second action was brought by appellee—Fred Harp for damages to his truck growing out of the collision.

The amended complaints in the two causes of action alleged that the death of Edgar Riddle and the damage to the truck were caused by defendant's negligence in:

---

1. The end farthest from the engine.

(a) failing to give any signal, notice or warning of the approach of the train;

(b) failing to post a flagman or lookout on the lead car of the train;

(c) operating the train carelessly and negligently at a speed of 15 miles per hour; and

(d) failing to stop the train after discovering the peril to decedent.

The wrongful death action was tried to a jury which was dismissed on August 14, 1969, as being unable to agree. On October 16, 1969, plaintiff filed a motion to consolidate both causes of action. This motion was subsequently granted by the trial court, and both causes of action were tried to a jury on February 9, 1970. This trial resulted in a verdict and judgment thereon for plaintiff—C. Kent Carter, personal representative of Edgar L. Riddle, for damages for the wrongful death of said Riddle in the amount of $15,000, and a verdict and judgment thereon in favor of plaintiff—Fred Harp for damages to his truck in the amount of $2,160.

Defendant—Railroad next filed a motion for a new trial[2] which, having been subsequently overruled by the trial court, gives rise to this appeal. In this motion the defendant alleged that the verdict of the jury was not sustained by sufficient evidence, that the verdict of the jury was contrary to law, and that the giving of certain instructions was an error of law. Defendant—appellant does not raise any contention concerning erroneous instructions on appeal, arguing only the first two contentions stated above.

The duty of this court in reviewing the record with regard to these contentions was stated in *Palmer* v. *Decker* (1970), 253 Ind. 593, 255 N. E. 2d 797, at 798, 20 Ind. Dec. 439, at 440, as follows:

"In reviewing the evidence, on appeal, we look to the evidence most favorable to the appellee to determine if there

2. Such motion should have been titled, "Motion to Correct Errors." See: Rule TR. 59, Indiana Rules of Procedure.

is substantial evidence of probative value or reasonable inferences therefrom to sustain the decision of the trial court. We will reverse the decision only if the evidence and reasonable inferences are undisputed, and could only lead to a decision contrary to the one arrived at by the jury."

See also:

*Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 529, 104 N. E. 2d 669; *Echterling* v. *Jack Gray Transport, Inc.* (1971), 148 Ind. App. 415, 267 N. E. 2d 198, 24 Ind. Dec. 682; *City of Whiting* v. *Grindle* (1945), 115 Ind. App. 407, 59 N. E. 2d 360.

In reference to the first issue, whether the verdict is sustained by sufficient evidence, appellant argues that there is no evidence to support plaintiffs' charge that the train was negligently operated at a speed of 15 miles per hour, or greater. While appellant correctly quotes uncontradicted testimony stating that the train was moving at "5 to 7 miles per hour", the verdict of the jury could well have been based on facts other than excessive speed.

Appellant next concedes that there is conflicting evidence in the record to justify a finding by the jury that defendant failed to give any signal, notice or warning of the train's approach and that the defendant failed to post a lookout on the lead car of the train. Appellant contends, however, that such "failures" do not constitute actionable negligence without a finding of duty, an omission or negligent performance of that duty and the damages complained of proximately resulting therefrom.

This position is supported by many Indiana decisions including *Taylor* v. *Indiana Bell Telephone Company* (1970), 147 Ind. App. 507, 262 N. E. 2d 399, at 401, 22 Ind. Dec. 681, at 684, wherein this court stated:

"The requisite elements for any action in negligence are a duty, a breach of that duty and injury as a consequence of the breach." (Citing authorities.)

Appellant's assertion that it owed the decedent no duty to sound a warning relies heavily on the fact that the acci-

dent occurred at a private (as opposed to a public) crossing. The Supreme and Appellate Courts of Indiana have often held that railroads owe a duty of reasonable care to users of private farm crossings. *Baltimore, etc. R. Co.* v. *Slaughter* (1906), 167 Ind. 330, 79 N. E. 186; *Terre Haute, etc. Traction Co.* v. *Ferrell* (1928), 95 Ind. App. 456, 164 N. E. 307 (transfer denied 1933). Similarly, in *New York Cent. R.R. Co.* v. *Wyatt, Admrx.* (1962), 135 Ind. App. 205, 230, 184 N. E. 2d 657 (transfer denied 1963), this court held that there is no statutory duty of a train to signal at private crossings, however, the train is required to give such timely and reasonable signals as required by due care under the circumstances.

In the instant case at least two of the crewmen testified that they were aware of the location of the crossing and were aware that in the past the crossing had been used to gain access to Derrick No. 2. In addition, the crewmen were aware that for years vision of, and from, the road was impaired by the stone which had been stacked in the area of the crossing. This, as well as other testimony concerning the dangerous circumstances surrounding the accident, is ample evidence upon which the jury might have found that due care imposed a duty on the defendant to sound a warning.

Defendant-appellant also contends that there is not sufficient evidence from which the jury might have found that defendant owed a duty to place a flagman on the *lead* car. Appellant-Railroad attempts to buttress this position by citing testimony to the effect that the lead car, a loaded flatcar, is usually considered too dangerous to ride, therefore, the empty flatcar, three cars back, was not only the nearest car to the head of the train upon which the flagman could ride, but also the car from which the flagman could most easily signal the engineer.

The proper standard by which to judge reasonableness of the flagman's actions is that of due care. Reasonable care

has been defined in Indiana as that degree of care which an ordinary prudent person would exercise under the same or similar circumstances. *Pierce* v. *Horvath, et al.* (1968), 142 Ind. App. 278, 285, 233 N. E. 2d 811 (transfer denied).

Under the dangerous circumstances surrounding the accident, the jury could have reasonably inferred that the flagman's view of the track was substantially blocked by the two loaded flatcars in front of him. The jury could, therefore, have found that due care imposed a duty on the train crew to position themselves differently so that they not only had a clear view of the track but that appropriate signals could be relayed to the engineer.

Appellant next argues that even if there were sufficient evidence from which the jury could have found either a duty to sound a warning or a duty to post a lookout differently, and if there were sufficient evidence from which the jury could have found a breach of either of these duties, there is no evidence to sustain a finding that either the failure to signal or the failure to properly post a lookout was the proximate cause of the accident.

Proximate cause has been considered by the courts of this State in many cases. The differing circumstances of these cases have given rise to various interpretations of the term "proximate cause." These interpretations were summarized by this court in *New York Central R. Co.* v. *Cavinder, etc.* (1967), 141 Ind. App. 42, 49, 211 N. E. 2d 502, 507 (transfer denied) in defining "proximate cause" as follows:

"A proximate cause of an injury is the cause which sets in motion the chain of circumstances leading up to the injury and has been defined as that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. *Moran* v. *Poledor* (1926), 84 Ind. App. 266, 273, 151 N. E. 140; 21 Ind. Law Encyc., Negligence, § 61, p. 319.

" 'Proximate cause is the act that immediately causes, or fails to prevent, an injury that might reasonably have been

anticipated would result from the negligent act or omission charged, and without which such injury would not have occurred. The test is to be found in the probably injurious consequences that were to be anticipated, and not in the number of subsequent events or agencies that might arise to bring about such consequences. *Evansville Hoop. etc., Co.* v. *Bailey, supra,* [(1909), 43 Ind. App. 153] and authorities cited.' (Citing authorities.)

"The Indiana courts regard foreseeability of injury as an essential element or fundamental test of proximate cause, and hold that negligence will not be deemed to have been the proximate cause of an injury so as to impose liability therefor unless the consequence was one which, in the light of attending circumstances, ought, could, or should reasonably have been foreseen or anticipated." (Citing authorities.)

Further, in considering the issue of proximate cause, this court at 51 of 141 Ind. App., at 508 of 211 N. E. 2d, held:

"In general, questions of proximate cause are for the court only in plain and undisputable cases, and if there is any reasonable doubt as to proximate cause, it is a question of fact to be determined by the jury." (Citing authorities.)

In the instant case, in light of the conflicting evidence on this issue, it was for the jury to weigh such evidence as to whether or not defendant's acts were the proximate cause of plaintiffs' damages. This court cannot properly disturb the conclusion of the jury.

The final issue raised by the appellant is that the verdict is contrary to law in that the jury failed to apply the doctrine of contributory negligence. The Railroad points out that the decedent was also under a duty to use due care as he approached the crossing. Appellant fails to recognize, however, that the mere happening of the accident is not of itself evidence of contributory negligence. Appellant's brief points out that there is some evidence in the record from which the jury might have concluded that the decedent left his truck parked on the track, while there is

other evidence from which the jury could have inferred that the decedent entered the crossing after learning of the train's approach. On the other hand, there is ample evidence in the record from which the jury might have found that the decedent, in the exercise of due care, would have to have driven onto the track to see the approach of the train.

The general rule in Indiana is that "[c]ontributory negligence is ordinarily a question of fact for determination by the jury or the trial court and it is only in cases where facts are undisputed and a single inference can be drawn therefrom that the Appellate Court can say as a matter of law that the course of conduct shown constitutes contributory negligence."

*Pontious* v. *Littleton* (1970), 146 Ind. App. 369, 255 N. E. 2d 684, at 691, 20 Ind. Dec. 422.

See also:
*N.Y. Central Ry. Co.* v. *Milhiser* (1952), 231 Ind. 180, 106 N. E. 2d 453; *Baltimore & Ohio R. Co.* v. *Patrick, Admtrx.* (1960), 131 Ind. App. 105, 166 N. E. 2d 654 (transfer denied).

With the conflicting testimony in the record this court cannot as a matter of law find that decedent was guilty of contributory negligence.

Finding no reversible error, the judgment of the trial court should be affirmed.

Judgment affirmed.

Sharp, Staton and White, JJ. concur.

NOTE.—Reported in 274 N. E. 2d 537.