PRYCE H. BAILEY ET AL. *v.* L. W. EDISON
CHARITABLE FOUNDATION OF GRAND RAPIDS, INC. ET AL.

[No. 1071A199. Filed June 21, 1972. Rehearing denied August 17, 1972.
Transfer denied February 26, 1973.]

*Clarence Borns, Call, Call, Borns & Theodors,* of Gary, for appellant.

*Samuel J. Furlin, Spangler, Jennings, Spangler & Dougherty,* of Gary, *Edmond J. Leeney, Galvin, Galvin & Leeney,* of Hammond, for appellee.

HOFFMAN, C.J.—This appeal arises from adverse judgments in two causes of action brought by the natural fathers of two deceased minors for the allegedly negligent death of their sons. These causes of action were consolidated on appeal. The two complaints filed by plaintiffs-appellants, Pryce H. Bailey and Virgil O. Dudley, each named as defendants the City of Gary and two police officers thereof, Gildardo A. Barrera and Robert R. Reinhardt; the L. W. Edison Charitable Foundation of Grand Rapids, Inc. (Edison) ; and Robert M. Edison, William H. Edison and John S. Edison, doing business under the trade name and style of L. W. Edison Company (also referred to herein as Edison).

The complaints filed by Bailey and Dudley each alleged, *inter alia,* that the defendants were guilty of negligence which was the direct and proximate cause of the death of their sons in that Barrera and Reinhardt, as Gary Police Officers, negligently and unreasonably engaged in a high-speed pursuit of the car in which their deceased sons were passengers; that the City of Gary negligently, needlessly and wantonly failed to instruct their police officers of the danger and the probability of danger to passengers created by any high-speed pursuit into a dangerous and hazardous area of a new highway construction and that Edison, as highway contractors constructing a new third lane on Interstate Highway 80, negligently, heedlessly and wantonly failed to light and barricade an unpaved portion of the new third lane.

The City of Gary, Barrera and Reinhardt filed a motion for summary judgment against plaintiff-Bailey, and a motion for summary judgment against plaintiff-Dudley. Attached to each of the two motions were the affidavits of Barrera and Reinhardt stating, in effect, that on June 30, 1968, the two police officers of the City of Gary, Indiana, were on patrol duty from twelve o'clock midnight until eight o'clock A.M. At about 1:15 A.M. at 32nd and Grant, Reinhardt, the driver of the police car, was forced to slam on the brakes, "although we had the green light", to avoid a collision with a 1960 Chevrolet "that ran the red light going north on Grant Street at about 75-80 miles per hour."

Reinhardt and Barrera then turned on their red flasher light and started after the speeding car which turned onto Interstate 80 in an eastbound direction. The police car was approximately three-fourths of a mile behind the speeding automobile, and as the police car entered Interstate 80, Reinhardt and Barrera turned on the "yelper."

The remainder of the affidavits read as follows:

"The car we were after was then a good distance ahead of us and I could see a car cutting back and forth from one lane to another. We were going 80 miles per hour and the

car was pulling away from us. Our Unit would not go any faster than 80 miles per hour.

"When we first saw the car at 32nd and Grant Street we idnetified [identified] it as a 1960 Chevrolet. We continued chasing the car east on I-80 and we intended to vive [give] up the chase at I-65 as we had lost sight of the car. Due to our speed we missed the I-65 turn and had to continue east on I-80. We intended then to get off at Central Avenue Interchange. As we approached that interchange we saw what we thought was smoke on the road ahead. We then continued east on I-80 and at the top of the viaduct of I-80 and Central Avenue we found a 1960 Chevrolet smashed up. It had run into a torn-up area of the lane next to the median strip. There was a large hole which the car went into, after knocking down steel barrels and many flashers on construction horses. The car we found smashed was the same car that ran the red light and was the one we were chasing. We never lost sight of the car until we decided to abandon the chase near the Central Avenue exchange which was west of the scene of the collision.

"We found at the scene that the car was occupied by three young men who we learned were Timothy W. Dudley, Pryce E. Bailey and James T. Kokoris."

In response to the motions for summary judgment Bailey and Dudley each filed a verified counter-affidavit of Sue Gall which, omitting caption and formal parts, reads as follows:

"1. That I have personal knowledge of the matters contained in the affidavits of Gary Police Officers Gilardo A. Barrera and Robert Reinhardt.

"2. That on June 30, 1968, from the window of my residence I could and did observe the Highway I-80 viaduct which was the scene of the crash of the vehicle in which decedent was a passenger as well as Highway I-80 west of the scene of the crash.

"3. That the Gary Police cruiser occupied by Officers Gilardo A. Barrera and Robert Reinhardt never gave up or broke off its chase of the vehicle in which the decedent was a passenger, had already passed the Central Avenue interchange and was in full pursuit behind the vehicle in which decedent was a passenger with its siren on, red lights flashing and proceeding at an unreduced rate of speed."

The trial court sustained the motions for summary judg-

ment filed by defendants Barrera, Reinhardt and the City of Gary.

Thereafter, the causes of action were consolidated and trial to a jury was conducted upon the liability of Edison. At the conclusion of the presentation of evidence by plaintiffs-Bailey and Dudley, Edison filed a motion for a judgment on the evidence. Such motion was sustained by the trial court which entered its judgment that "plaintiffs take nothing by way of their complaint and defendants recover their costs in this action."

Bailey and Dudley timely filed their motion to correct errors which was overruled by the trial court, and have perfected this appeal. On appeal there are two controlling issues. The first issue is whether the trial court erred in entering summary judgment in favor of the City of Gary, Barrera and Reinhardt. The second issue is whether the trial court erred in entering judgment on the evidence in favor of Edison.

With regard to the propriety of granting a summary judgment, the Appellate Court in *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, at 481, 247 N. E. 2d 215, at 220, 17 Ind. Dec. 401 (transfer denied), stated:

> "The function and duty of the trial court is simply stated in Vol. 3, Federal Practice and Procedure, Barron & Holtzoff (Wright Ed.), § 1236, at page 157, which states:
>> " 'On a motion for summary judgment, the formal issues presented by the pleadings are not controlling and the court must consider the affidavits and other matters presented by the parties to determine whether the motion should be granted. It has been stated that the court should take the pleadings as they have been shaped to ascertain what issues of fact they make and then consider the affidavits, depositions, admissions, answers to interrogatories and other similar material to determine whether any of the issues are real and genuine. On such a motion the court considers the entire setting of the case and all papers of record. The pleadings as a whole and not merely the complaint are considered. In addition to the pleadings the court considers affidavits, admissions, stipulations, depositions and

answers to interrogatories which are submitted for or against the motion.' "

We have examined the pleadings filed in the trial court and conclude that only two issues were formed thereby with respect to the City of Gary, Barrera and Reinhardt. One is whether the officers, Barrera and Reinhardt, negligently and proximately caused the death of the deceased sons of the plaintiffs. The second is whether the City of Gary proximately caused the death of plaintiffs' sons by failing to instruct their police officers of the dangers of a high-speed chase.

The record before us discloses no facts whatsoever pertaining to whether or not the City of Gary instructed its police officers as to high-speed pursuits nor was there any evidence that such failure, if there was one, was the proximate cause of the accident. Therefore, summary judgment was properly entered on this issue.

With regard to whether the officers negligently and proximately caused the death of the occupants of the car, the affidavits filed by the parties, as hereinabove set forth, show the existence of a disputed fact, to-wit: Whether at the time of the accident, the officers were pursuing the fleeing vehicle.

This fact, although in dispute, has no bearing on the negligence of the officers. Even assuming the officers were in full pursuit at the time of the accident, there is presented no genuine issue of fact as to the officers' negligence in maintaining such pursuit. The issue is not whether the police were in pursuit of an escaping car. The issue is whether the police officers, in pursuing the car, were negligent and the proximate cause of the death of plaintiffs' sons.

Actionable negligence may only be maintained by the showing of a duty, a breach thereof, and an injury as the proximate result of the breach. *Chicago, Indianapolis and Louisville R. Co. v. Carter* (1971), 149 Ind. App. 649, 274 N. E. 2d 537, 27 Ind. Dec. 445.

Appellants correctly contend that a duty of care is imposed

on the drivers of emergency vehicles by IC 1971, 9-4-1-25, Ind. Ann. Stat. § 47-1825 (Burns 1971 Supp.), which, in pertinent part, reads as follows:

"(c) The driver of any authorized emergency vehicle when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding, but not upon returning from a fire alarm, may exercise the privileges set forth in this act, but subject to the conditions herein stated.

"(d) The driver of an authorized emergency vehicle may:

1. Park or stand, irrespective of the provisions of this act;

2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

3. Exceed the maximum speed limits so long as he does not endanger life or property;

4. Disregard regulations governing direction of movement or turning in specified directions.

"(e) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals meeting the requirements of law, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

"(f) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

In *Clark* v. *Sterrett* (1966), 141 Ind. App. 384, at 386, 220 N. E. 2d 779, at 781, reference was made to the intent of the above quoted statute as follows:

"The intent of the statute is protection of life and property, and is served by extending a privilege with one hand, and tempering it with the other."

Thus, the protection of life and property by capturing a fleeing offender who, by not stopping his vehicle, wantonly and

wilfully endangers public safety must be weighed against the possibility of endangering life and property by commencing or continuing the pursuit. The "duty to drive with due regard for the safety of all persons" must be measured in terms of due care under the circumstances.

Under the circumstances in the instant case there was no evidence presented showing that the officers breached their duty to drive with due care. The facts as shown by the affidavits filed herein are that at approximately 1:15 A.M. the car in which the plaintiffs' sons were riding ran a red light at approximately 75-80 miles per hour. Then it turned onto Interstate 80 and, with the police car in pursuit, red lights flashing and siren on, fled the police at a speed in excess of 80 miles per hour.

The policemen were in no way negligent in giving chase. Traffic violations may be considered misdemeanors, however, running a red light at 75 miles per hour and almost hitting another vehicle threatens to be as injurious to the public safety as many serious crimes.

It is appellant's contention that the police were negligent in pursuing the fleeing vehicle into a construction area. Such contention, however, is contrary to the facts. Interstate 80 was being widened by adding a new third lane to the two existing lanes. No evidence was adduced showing the existing lanes to be unsafe for driving at the posted 50 miles per hour speed. Therefore, no genuine issue of material fact is presented that the police were unreasonable in pursuing the car along Interstate 80.

Furthermore, the great weight of authority from other jurisdictions holds that police, if engaging in a reasonable pursuit, cannot be said to be the proximate cause of accidents caused by escaping law violators.

In *United States* v. *Hutchins* (1959), 268 F. 2d 69, 83

A. L. R. 2d 447, a fourteen-year-old girl sued the United States alleging the personal injuries for which she was seeking damages were caused by the negligence of two patrolmen employed by the United States. The car in which the plaintiff was a passenger was driven by her father. The patrolmen stopped the car for a traffic violation. The driver was seemingly cooperative, but at an opportune moment returned to his own car and drove away. The officers pursued in their patrol car to an intersection where the car driven by the plaintiff's father crossed the center line and struck another automobile. In reversing the judgment of the District Court, the Sixth Circuit Court of Appeals held:

> "The direct and proximate cause of injury to his daughter was obviously the utter disregard by Hutchins of due care in driving his automobile. The officers would have been derelict in their duty had they not pursued the escapee in the reasonable manner in which they did pursue him." (*Ibid* at 72 of 268 F. 2d, at 451 of 83 A. L. R. 2d). See also: *Roll* v. *Timberman* (1967), 94 N. J. Super. 530, 229 A. 2d 281; *McCormick* v. *State* (1964), 43 Misc. 2d 777, 252 N. Y. S. 2d 199; *Wrubel* v. *State* (1958), 11 Misc. 2d 878, 174 N. Y. S. 2d 687; *Pagels* v. *City and County of San Francisco* (1955), 135 Cal. App. 2d 152, 286 P. 2d 877; *Draper* v. *City of Los Angeles* (1949), 91 Cal. App. 2d 315, 205 P. 2d 46.

In *Chambers* v. *Ideal Pure Milk Co.* (1952), 245 S. W. 2d 589, at 591, it was stated:

> "[T]o argue that the officers' pursuit caused Shearer to speed may be factually true, but it does not follow that officers are liable at law for the results of Shearer's negligent speed. Police cannot be made insurers of the conduct of the culprits they chase."

In *McCormick* v. *State, supra,* at 202-203, of 252 N. Y. S. 2d, it was stated:

> "The act of the party sought to be charged is not to be regarded as a proximate cause unless it is in clear sequence with the result and unless it could have reasonably been anticipated that the consequence complained of would result from the alleged wrongful act. (Saugerties Bank v. Dela-

ware & Hudson Co., 236 N. Y. 425, 430, 141 N. E. 904, 905, 906.)

\* \* \*

"It is the duty of a police officer to take steps to suppress offenses and apprehend the offenders.

"In an emergency, a police officer must do his duty; he should not be careless or reckless; he should act in a prudent and in as careful a manner as he possibly can.

"Police officers have a right to use whatever means necesary to make an arrest and unless they exceed proper and rational bounds, or act in a negligent, careless or wanton manner, they are not liable for damages sustained, even by innocent parties. The action of the troopers in this case must be weighed in the light of the circumstances as they arose, and not as measured by subsequently developed facts." (Citing authorities.)

In the case at bar, we have determined as a matter of law that the pursuit was reasonable. Such pursuit cannot be said to be the proximate cause of the death of the passengers of a vehicle which ran a red light at 75 miles per hour and refused to stop when the police gave chase. The summary judgment entered by the trial court is affirmed.

The second issue to be decided is whether the judgment on the evidence[1] entered in favor of Edison was proper.

In *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, at 623, 230 N. E. 2d 315, at 318, it is stated:

"It is only where there is a total absence of evidence or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant, that the court may give a peremptory instruction, \* \* \*." See also: *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734.

In *Hollowell et al.* v. *Greenfield by Next Friend* (1966), 142 Ind. App. 344, at 353-354, 216 N. E. 2d 537, at 542 (transfer denied), it is stated:

"The rule has been stated that if there is any evidence to support an issue although the evidence is slight, it should

1. See TR. 50, Indiana Rules of Procedure.

be submitted to the jury. However, to require an issue to be submitted to the jury there must be something more than a mere scintilla of evidence and a party is not entitled to go to the jury on a fact where there is no evidence on which the jury can in any justifiable view find for the party producing it." (Citing authorities.)

In the instant case, the complaints of Bailey and Dudley alleged in pertinent part:

"1. That the defendant L. W. Edison Company is a Michigan Co-partnership composed of three partners, Robert M. Edison, William H. Edison and John S. Edison and that the defendant L. W. Edison Charitable Foundation of Grand Rapids, Inc. is a Michigan Corporation and that the co-partnership and corporation are both duly organized and existing under and by virtue of the laws of the State of Michigan and at all times hereinafter mentioned in this complaint were identical, interlocking and interchangeable with one being an alter ego of the other and were both highway contractors duly operating, qualified and performing under the Federal Interstate Highway Defense Act and building, constructing, supervising, directing, controlling, and in charge of the surfacing and paving of two additional new third lanes and shoulders onto the existing four-lanes of Interstate Highway 80, * * *."

Edison answered *denying this allegation*. Therefore, to show the negligence complained of, it became incumbent upon Bailey and Dudley to *prove* by probative evidence that Edison was constructing the highway at the precise scene of the accident and, thus, had a legal duty to maintain adequate warnings around the construction area.

The only evidence in the record before us that in any way connects Edison with the construction area was the testimony of the investigating State trooper, Pete Popplewell, which, in pertinent part, is as follows:

"Q. How long had you been patrolling the area that L. W. Edison was working, do you have any recollection?

"A. Well, from the time they started construction until they ended it.

"Q. And did you work a regular patrol in connection with L. W. Edison Company?

"A. No, sir, I didn't."

This testimony is no evidence whatsoever that Edison was doing construction work at the *site of the accident*. Therefore, we are compelled to conclude that Bailey and Dudley have failed in their burden of proof to show that Edison was charged with the legal duty to maintain warnings around the construction area. Thus, actionable negligence was not established. The judgment on the evidence is affirmed.

Judgments affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported in 284 N. E. 2d 141.