JACKSON W. MODISETT ET AL. *v.* LEWIS E. JOLLY.

[No. 1271A267. Filed August 31, 1972. Rehearing denied October 4, 1972. Transfer denied February 26, 1973.]

174

*Eugene Cooper, Gary K. Kemper, Cooper, Cox, Jacobs and Kemper*, of Madison, *Frank E. Spencer*, of Indianapolis, for appellants.

*Roger L. Parkieck, Montgomery, Elsner & Pardiek*, of Seymour, *Harold H. McConnell, Hamilton & McConnell*, of North Vernon, *William Prime*, of Madison, for appellee.

LOWDERMILK, J.—This appeal comes to us from an action which was commenced on August 27, 1968, by the filing of a complaint for money due under contract.

The complaint alleges that the plaintiff-appellee and defendants-appellants were medical doctors and engaged in the practice of medicine together as partners in Madison, Indiana.

The plaintiff-appellee was terminated from the partnership and entered into a contract with the remaining partners that he was to be paid $20,000 on January 3, 1967 and $20,600 on January 3, 1968, the latter including interest as set forth in the contract. Interest was to be paid at the rate of 7%

per annum on the amount due in the event of default for more than ten days and attorneys fees and charges for the amounts due and owing.

Plaintiff-appellee alleges demand for the money was made and the appellants refused to pay the same and $40,600 with interest at 7% per annum was due and unpaid plus a reasonable amount for attorney fees for collection.

An answer in two Paragraphs was filed, the first of which was admission and denial and the second in estoppel was affirmative and in which the defendant-appellants alleged termination of the partnership on July 1, 1965 which was executed by the plaintiff-appellee.

That by the terms of the agreement plaintiff-appellee was to refrain from practicing medicine in Madison, Indiana, or anyplace within a 35 mile radius for five years.

It was further alleged that plaintiff-appellee, in violation of his written agreement, both partnership agreement and termination agreement, did reopen the practice of medicine in Madison after the 26th day of August, 1966, all in violation of the agreement.

The prayer of the second Paragraph of answer was that the plaintiff-appellee be estopped to set up any claim for money as against them, and for judgment.

The cause of action was venued to the Jennings Circuit Court where it was tried after a pre-trial order was made and findings and judgment entered on June 22, 1971 whereby the court found for the plaintiff-appellee and against all defendants-appellants; that plaintiff-appellee should recover $40,-000 on the complaint, together with interest and attorneys fees; plaintiff to recover interest in the amount of $4,570, which interest is accrued on the contract to the date of trial.

The court further found that plaintiff-appellee is entitled to recover attorney fees in an amount to be determined by the court in a future hearing as to the reasonable value of the attorney's services and the parties were directed to agree on a

hearing date on the issue of attorney fees on or before July 15, 1971, and upon the failure so to do the court will determine the fees in accordance with the suggested minimum fee schedule of the Indiana State Bar Association.

Defendants-appellants, by counsel, filed with the Clerk of the Jennings Circuit Court their certain Request for Notice, which Request stated that the cause was taken under advisement by the Judge of the Jennings Circuit Court "with each party to file briefs as to the law on evidence and in lieu of argument on or before the first day of November, 1970. That the brief of the defendants was duly filed on or before November 1, 1970. That on the 24th day of September, 1970, and at the time said case was taken under advisement and continuously thereafter, Rule TR. 53.1 of the Indiana Rules of Procedure was in effect and binding on all trial court judges in the State of Indiana . . . (Rule is set out verbatim) . . . Accordingly, the Hon. Eugene Hough entered an order in the above cause when he was completely without jurisdiction to so act."

The petition further requested the Clerk to notify the trial judge and the Supreme Court that the cause had been withdrawn from said trial judge and requested the Supreme Court of Indiana to appoint a special judge.

Thereafter, on August 16, 1971, defendants-appellants further filed with the Clerk of the Jennings Circuit Court their certain Request to the Clerk whereby they alleged that the order of the Honorable Eugene Hough, judge of the Jennings Circuit Court, on the 22nd day of June, 1971, awarded the plaintiff's attorney reasonable value of attorney's services and the parties were directed to agree on a hearing date on the issue of attorney's fees before the 15th day of July, 1971, and, upon their failure to do so, the Court was to determine the fees in accordance with the suggested minimum fee schedule of the Indiana State Bar Association; that the parties did not agree on a hearing date on the issue of attorney's fees; that the Honorable Eugene Hough has not determined the

amount of attorney's fees; and that, therefore, the judgment entered as of June 22, 1971, is not a final judgment.

The prayer of the said Request was that the Clerk notify the trial judge and the Supreme Court that the Judgment was not final; that the court had the matter under advisement for more than 90 days after submission, and that said cause has automatically been withdrawn from his jurisdiction.

Thereafter, on August 18, 1971, a motion to correct errors was filed. The four specifications were:

"1.   Uncorrected error of law occurring subsequent to trial in that the trial judge, contrary to Rule TR. 53.1 of the Indiana Rules of Procedure, held the above-entitled cause under advisement for more than ninety (90) days after the submission thereof.

"2.   The decision of the court is contrary to law.

"3.   The decision of the court is contrary to the evidence.

"4.   Excessive amount of recovery."

This court is cognizant of the fact that we are not to write summary opinions. However, we also are cognizant of the rule that the law does not require the doing of a useless thing.

Defendants-appellants' motion to rid themselves of the Honorable Eugene Hough, Judge of the Jennings Circuit Court, under Rule TR. 53.1 has already been before our Supreme Court and has been fully discussed under said Rule in a well reasoned opinion by Justice Prentice. The author of this opinion finds himself in the position that he could in no way improve on the construction of Rule TR. 53.1 or on the result reached by the able Justices of the Supreme Court and, therefore, as to specification 1, relies upon and cites *Lewis E. Jolly* v. *Jackson W. Modisett, et al.* (1971), 257 Ind. 426, 275 N. E. 2d 780, and also cites as further authority the case of *Raisor* v. *Kelly* (1971), 258 Ind. 1, 275 N. E. 2d 542, in which Justice Prentice discussed TR. 53.2 (A), 77 (A) (E) and 72 (D).

In *Raisor* the trial judge had ruled but waited more than 90 days before entering the minutes or making the Order Book entry on his ruling.

Justice Prentice said:

". . . Minutes of all rulings should be made immediately and complete order book entries should be made and signed as soon as possible thereafter. However, it is clear as evidenced by the plaintiffs' acts of September 4, 1971, that the trial judge had theretofore announced his ruling upon the motion to correct errors. Therefore, no issue was under submission when their praecipe was filed under Trial Rule 53.2(A). . . ."

The court then set aside the withdrawal of the submission and continued the jurisdiction of the trial judge.

In other words, Rule TR. 53.1 had been definitely construed to prevent a lawyer's remaining inactive and permitting the trial judge to omit entering his judgment within 90 days from the date of the trial and then after the 90 days expired when the court enters its judgment adverse to one of the parties, that party can then complain that the ruling was too late and get another judge and re-try his lawsuit.

In our opinion, it was never the spirit or intent of the Rules that Judges of our trial courts, and especially those of the courts with a heavy load, might overlook a case for 90 days and having done so the party losing the same would get a second shot at it. Such was certainly not the intent of our Rule.

Having considered the above we are of the opinion that specification 1 of the motion to correct errors is without merit under the construction of the Rules as heretofore related and the trial court committed no error under the Trial Rules.

Defendants-appellants have grouped specifications 2 and 3 of the motion to correct errors and argued them as one and we shall treat them in this opinion as one.

Plaintiff-appellee, Dr. Jolly, entered into the contract hereinabove referred to with defendants-appellants and for which he was to receive $40,000, payable in two installments, plus interest, as hereinabove stated, and also quit practicing medicine in Madison, Indiana, or within a 35 mile radius.

Dr. Jolly did exactly as he had contracted. However, a short time later he contacted Dr. Robert O. Zink, one of the defendants-appellants, to determine if an agreement could be reached between the same parties whereby Dr. Jolly could resume the practice of medicine in Madison, Indiana.

The parties did agree that the restriction on Dr. Jolly to practice medicine in Madison would be removed in return for his agreement to accept $20,000 instead of $40,000 on the original termination contract.

The evidence is disputed as to whether or not the agreement to rescind the original termination contract in part became effective when Dr. Jolly talked with Dr. Zink or after the contract had been negotiated and drafted by lawyers for the reduced consideration of the first contract as a consideration for Dr. Jolly's right to re-enter the practice. The evidence showed that Dr. Jolly requested assurance from Dr. Zink that he would speak for other members of the group before he again took up the practice. Dr. Jolly testified "I don't remember whether he called me back the next day or exactly what, but I did not start practicing until I had been assured by him that they all agreed to it." The agreement and new contract to be negotiated was not a reconsideration of the original figure of $40,000, but was to be a contract with a definite understanding that he could re-enter the practice by receiving only $20,000 rather than the $40,000 originally set up in the contract.

Dr. Jolly, after resuming the practice of medicine in Madison, discontinued the same and insisted on payment pursuant to the terms of the contract of August 26, 1966 (the $40,000 plus interest figure.)

Defendants-appellants contend the award of $40,000 plus interest and attorneys fees to Dr. Jolly was contrary to law, contrary to the evidence, and awarded an excessive amount of recovery. This contention was based on the fact that the original termination agreement which provided said sum and required Dr. Jolly to cease practicing medicine in Madison for five years had been modified at the request of Dr. Jolly, acted upon by all parties, and provided for $20,000 and allowed plaintiff to practice, which he immediately did, in Madison. Defendants-appellants further contend that plaintiff-appellee Dr. Jolly waived his right to the other $20,000, and having prevailed on the defendants to relinquish their right that he refrain from so practicing, is estopped to demand the original $40,000.

Defendants-appellants further urge error in the violation of Rule TR. 53.1, which we have heretofore laid at rest and will not further discuss.

Dr. Jolly desired to re-enter the practice of medicine immediately after ridding himself of the restriction clause on his practice in Madison from the contract. Still, when he asked if he could start practice "now" after the reduction from $40,000 to $20,000, he stated "Until we see if the legal eagles can draw up a satisfactory contract." Dr. Jolly stated that by his reference about drawing up a satisfactory contract he was not talking about negotiating that figure of $20,000 all over again. He did not think that the defendants-appellants would come up with a written contract stating that plaintiff would get a different amount than the $20,000; he thought that the $20,000 deal was substantial and would stand, according to arguments of defendants-appellants.

Dr. Jolly, plaintiff-appellee, admits that the contention of defendants-appellants is true; however, he asked permission to resume his practice in Madison while the matter of the proposed modification was referred to the defendants-appellants' attorneys to see if they could arrive at a contract. Defendants-appellants granted permission, after which Dr.

Jolly resumed the practice. The negotiations on this new agreement continued through the attorneys for a period of four to five weeks before a new contract, which was signed by defendants-appellants, was forwarded to Dr. Jolly.

It is Dr. Jolly's contention that the proposed modification encompassed several other alterations to the original contract which were not acceptable to him and he declined to sign it. It was apparent that the negotiations had failed and Dr. Jolly then immediately discontinued the practice, left Madison, and has not practiced there since.

Defendants-appellants later tendered $10,000 which was refused by Dr. Jolly, and a year later tendered a second payment which was also refused, and this was followed by the filing of this action.

Plaintiff-appellee, Dr. Jolly, contends that defendants-appellants, to invoke the doctrine of equitable estoppel, must plead and prove several elements, not the least of which is that they were damaged by Dr. Jolly's brief resumption of the practice. He further contends the defendants waived their right to enforcement of the restrictive covenant by granting to Dr. Jolly permission to resume his practice during the period of negotiations by the attorneys, and that this waiver precludes them from claiming damages or set-off by reason of a breach.

There is no evidence which we can find in the record that the plaintiffs-appellants were damaged by the brief resumption of the practice of medicine in Madison by Dr. Jolly.

This court in the case of *Justice* v. *Mid-State Homes, Inc.* (1970), 146 Ind. App. 662, 257 N. E. 2d 843, discussed the issue of estoppel and cited the case of *Richardson* v. *St. Mary's Hospital* (1963), 135 Ind. App. 1, 191 N. E. 2d 337, wherein the court said on this issue:

> " 'In order to constitute an equitable estoppel or estoppel *in pais* there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have

been without knowledge, or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice. *Midland Building Industries, Inc.* v. *Oldenkamp et al.* (1952), 122 Ind. App. 347, 103 N. E. 2d 451; 31 C. J. S. Estoppel § 67, p. 254.

" 'Where an estoppel is relied upon, it must be pleaded with particularity and precision, and nothing can be supplied by intendment, and, when there is ground for inference or intendment, it will be against, and not in favor of, the estoppel. *Bowes et al* v. *Lambert et al.* (1943), 114 Ind. App. 364, 51 N. E. 2d 83, 51 N. E. 2d 897; *Dudley et al.* v. *Pigg* (1898), 149 Ind. 363, 48 N. E. 642.'

"This court, in *Schill* v. *Choate* (1969), 144 Ind. App. 543, 247 N. E. 2d 688, 696, has quoted *Richardson* v. *St. Mary's Hospital, supra,* as still being the law and we believe it is good authority on this point."

*I. T. T. Cannon Electric, Inc.* v. *Brady* (1967), 141 Ind. App. 506, 230 N. E. 2d 114; *Starkey* v. *Galloway* (1949), 119 Ind. App. 287, 84 N. E. 2d 731.

Defendants-appellants did not show that they had been damaged in any amount by plaintiff-appellee, Dr. Jolly, re-entering the practice of medicine for about four or five weeks with their permission and pending the drawing up of the contract giving Dr. Jolly the right to practice in Madison.

Defendant-appellants contend the termination contract of August 26, 1966 was not required to be in writing and therefore the oral agreement in modification thereof was valid and enforceable.

The Statute of Frauds, Ind. Ann. Stat. § 33-101 (Burns 1969 Repl.) consists of five specifications. The fifth specification is as follows: to-wit:

"Fifth. Upon any agreement that is not to be performed within one (1) year from the making thereof.

"Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party

to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not exceeding the term of three (3) years."

Defendants-appellants further contend that the provision germane to the contract of August 26, 1966, which might be argued to bring it within the Statute of Frauds is the "Fifth" sub-paragraph, *supra*.

The weight of authority appears to adhere to the following, proposition, to-wit:

". . . The Statute of Frauds concerning contracts not to be performed within a year applies only to contracts which are not to be performed on either side within the year and not to agreements which are to be performed or have been performed by one or either of the parties within that time . . ." 6 A. L. R. 2d 1053, at p. 1167.

We cannot disagree with this contention as to what the Statute of Frauds provides but we do disagree with defendants-appellants' argument as it applies to the case at bar.

Briefly, there were two provisions in the termination contract which were not to be performed within one year. The first was the payment to Dr. Jolly of the two payments aggregating $40,000 at $20,000 each. Appellee's attorney contended in oral argument that the provision in the contract pertaining to payments would make it impossible to pay the full amount within one year for the reason that the contract entered into by and between the parties was mandatory as to payment in that it provided the payment of $20,000 "shall" be made in each of the two years. Appellants' attorney, in oral argument, contended that under the terms and phrasings of the contract that the full consideration could have been paid within one year and would have taken the contract from within the limitations of the Statute of Frauds.

It is not necessary that we pass on this very close question because of the fact that there was another provision in the contract which could not have been complied with and would not take the contract out of the operation of the said statute.

The other provision which made it impossible to terminate the contract within one year was the agreement by Dr. Jolly by the terms of the original agreement to leave the partnership to refrain from practicing medicine in Madison or within a 35 mile radius thereof for five years. This provision, in our opinion, definitely places the termination of the contract under the provisions of specification 5 of the Statute of Frauds and required said contract to be in writing, which was done, and which would require any amendments thereto to be in writing.

Defendants-appellants' contention that the oral relinquishment of the requirement of plaintiff-appellee, Jolly, to refrain from practice in Madison was made known to Dr. Jolly orally and constituted a parol modification of the August 26, 1966, agreement when acted upon by all parties is untenable. It must have been reduced to writing and executed by all interested parties thereto before there was a relinquishment.

The question of the meeting of the minds of these parties on the contract for relinquishment was before the trial court. It took four or five weeks for the attorneys to draft the necessary document. When the draft was presented to Dr. Jolly it had provisions inserted therein by lawyers for the respective parties which had not been agreed upon by parol by Dr. Jolly or any of the defendants-appellants. Dr. Jolly, as heretofore stated, refused to execute this agreement and immediately ceased to practice medicine in Madison or within a 35 mile radius of that city.

The trial court heard the evidence, which was conflicting, and after weighing the same and after considering the evidence most favorable to the plaintiff-appellee Jolly, found the preponderance of the evidence was in favor of Dr. Jolly and awarded judgment accordingly. *Chicago, Indianapolis & Louisville R. R. Co.* v. *Carter* (1971), 149 Ind. App. 649, 274 N. E. 2d 537-539.

This court cannot and will not weigh the evidence. This rule of law is so well settled it needs no citation of authority.

It is our opinion that the court's finding and judgment was not contrary to law nor was it contrary to the evidence.

Defendants-appellants did not argue in the argument section of their brief the matter of excessive damages and we shall not consider that specification here as it was not argued and therefore was waived. Rule AP 8.3 (A) (7).

For the above and foregoing reasons the judgment of the trial court is hereby affirmed and the cause is remanded to the Jennings Circuit Court and the trial judge is directed and ordered to hear further evidence on the matter of interest and for a further determination of expenses, including, but not limited to, attorneys' fees.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported in 286 N. E. 2d 675.