GEORGE P. BAKER ET AL. *v.* HERMAN FISHER ET AL.

[No. 172A34. Filed October 31, 1972. Rehearing denied November 27, 1972. Transfer denied June 12, 1973.]

*Harold Abrahamson, Kenneth D. Reed, Crumpacker, Abrahamson & Reed,* of Hammond, for appellants.

*Paul B. Huebner,* of Hammond, for Herman Fisher, *Richard Mayer,* of Gary, *Peter Koransky,* of Gary, Attorneys for appellees Herman Fisher and Transport Motor Express, Inc., *Herbert L. Fehner, Vitold Reey,* of Merrillville, for defendant Chicago South Shore.

SHARP, J.—This case was initially commenced by the Plaintiff-Appellee, Herman Fisher as Plaintiff against the Penn-Central Transportation Company (Penn Central) and the Chicago South Shore & South Bend Railroad Company (South Shore) as Defendants wherein it was alleged that Fisher suffered personal injuries and damages to his semi-tractor and trailer as a result of a collision which took place at a railroad crossing in Porter County, Indiana, on January 23, 1968, at approximately 5:00 o'clock P.M. between Fisher's semi-tractor and a Penn Central Train.

This case was tried to a jury which returned a verdict for Fisher and against Penn Central in the sum of $8,000.00 and at the same time returned a verdict against Fisher and for the South Shore. There was also a verdict against Penn Central on its counter-claim. Penn Central filed its motion to correct errors which was overruled and is the basis for this appeal.

Fisher's complaint, in two legal paragraphs, was filed on March 3, 1969. Paragraph I of said complaint asserted that Penn Central and South Shore were each negligent in the installation of separate automatic signals at the crossing in question in that such separate automatic signals constitute an automatic trap for long vehicles or trailers and tractor combinations crossing said railroad tracks. Said complaint further alleges negligence on the part of Penn Central in operating its diesel train engine at said crossing at a high and unreasonable rate of speed under the conditions, circumstances and physical nature of the intersection and crossing involved.

We must consider the factual record here in the light most favorable to the decision of the trial court.

On the date of the collision, Fisher was driving a semi-tractor trailer as an agent of Transport Motor Express hauling steel coils from Midwest Steel Plant to Burns Harbor in Porter County, Indiana. The four lane road to and from the Midwest Steel Plant, at the place in question, runs generally north and south and is a private roadway on Midwest Steel property. A short distance north of where this road intersects with U.S. Highway 12 are four sets of railroad tracks. The two northern-most set of tracks are owned by Penn Central and the two southern-most set of tracks are owned by South Shore. The distance between these two sets of tracks is approximately 86 feet. The railroad crossings of both sets of tracks by the private roadway are protected by flashers and gates which are coordinated. A train operating on the tracks of either Penn Central or South Shore activate the flashers at both crossings but only activate the flashers that are facing traffic moving toward the train. In this case, as Fisher first approached the Penn Central Tracks there were no flashers or signal devices operating. As the front part of Fisher's tractor was leaving the Penn Central tracks the signal devices in front of him, those being the flashers north of the South Shore tracks, which control southbound traffic between the Penn Central and the South Shore tracks came on and the traffic in front of Fisher stopped, leaving the rear part of Fisher's vehicle still on the Penn Central tracks. The car immediately in front of Fisher stalled and Fisher blew his horn.

There is a curve to the west of the crossing in question which an approaching train doesn't come out of until it is approximately 1000 feet west of this particular crossing. The eastbound passenger train of Penn Central here in question was traveling at approximately 75 miles an hour as it approached this crossing from the west. Fisher's vehicle was not observed by the employees on that Penn Central train

until the train had reached a point approximately 1300 feet west of the crossing here in question. This crossing could have been observed by the engineer on the train at a distance of two to three thousand feet west of the crossing. The speed of the train involved in the accident did not begin to reduce until a point approximately 500 feet west of the crossing. The train did not come to a stop before it reached the crossing and therefore collided with Fisher's trailer.

The Appellants advance three distinct arguments and we will attempt to deal with each of them.

## I.

The Appellants argue that Fisher was guilty of contributory negligence as a matter of law. We will not belabor this issue since it is not meritorious. The rule in Indiana is very clear that contributory negligence is generally a question of fact for the jury and it is only where the facts are undisputed and where a single inference can be drawn from the facts that the court may say, as a matter of law, that certain facts constitute contributory negligence. See *Cushman Motor Delivery Co.* v. *McCabe,* (1941), 219 Ind. 156, 36 N. E. 2d 769, and *Pennsylvania Railroad Co.* v. *Mink* (1966), 138 Ind. App. 311, 212 N. E. 2d 784, *New York Central Railroad Co.* v. *Cavinder* (1965), 141 Ind. App. 42, 211 N. E. 2d 502, *New York, C & St. L. R. Co.* v. *Mercantile Nat. Bank of Hammond* (1960), 130 Ind. App. 638, 165 N. E. 2d 383.

## II.

Penn Central secondly attempts to argue that the operation of this train, including its speed, was, as a matter of law, not the proximate cause of the collision. Penn Central contends that the evidence on this issue of proximate cause is legally insufficient. Prior to the application of the brakes, the train was traveling at a speed of 75 miles per hour. There was no statute or ordinance which

regulated the speed of the train at the place in question. The rule in Indiana is very clear that speed, in and of itself, in the absence of a regulating statute or ordinance, does not constitute negligence but such speed may constitute negligence in the light of all the surrounding circumstances. In this regard Judge Ryan, speaking for the court, in *New York Central R. R. Co.* v. *Wyatt* (1962), 135 Ind. App. 205, 227, 184 N. E. 2d 657, trans. den. 193 N. E. 2d 63, stated:

"We recognize, of course, that a traveler upon either a public highway or private roadway approaching a railroad crossing is required to use every reasonable precaution to keep a lookout and listen attentively for an approaching train and he is not relieved of this duty simply because the train fails to signal, (New York Central Railroad Company v. Glad, supra) but he need not anticipate negligence on the part of the railroad to avoid a charge of contributory negligence. Kelly v. N. Y. C. & S. L. R. R. Co. (1936), 102 Ind. App. 175, 199 N. E. 453. In fact, a motorist has a right to assume, that if a train is approaching, the railroad will exercise due care, and to act upon such assumption. (Bartley v. Chicago & E. I. R. Co., supra).

In the case of Baltimore & Ohio R. Co. v. Reyher, Admx., supra, the railroad argued at page 549 of 216 Ind. and page 285 of 24 N. E. 2d:

". . .That if a person, by the exercise of ordinary care, could have known of the approach of a train, by looking or listening, in time to have avoided the injury, it will be presumed, . . . that he did not look or listen, or, that if he did, he did not heed what he saw or heard.' In rejecting this argument, the Supreme Court of Indiana said (page 550 of 216 Ind. and page 285 of 24 N. E. 2d)

" ' "The law of this state does not permit the indulgence in the presumption that a person will exercise his faculties for his own protection and safety, nor may it be presumed that he was or was not guilty of contributory negligence, nor that he failed to exercise ordinary care." '

'Consequently, when courts have undertaken to instruct juries that this or that may be presumed, without evidence of the fact, they have invariably committed error.'

In a recent opinion of this court in Baltimore & Ohio Railroad Company v. Patrick (1960), 131 Ind. App. 105,

166 N. E. 2d 654, Judge Myers said at page 117 of 131 Ind. App. and page 661 of 166 N. E. 2d:

'There was much conflict in the evidence as to whether there was sufficient warning given by those operating the train prior to the collision. The question of negligence, proximate cause, and contributory negligence therefore were questions of fact for the jury after proper instructions.' "

It is correct that the railroad is under a duty to use due care in the operation of trains at private crossings and this necessarily includes the duty to operate such trains at a reasonable speed under the circumstances. See *New York Central R. R. Co.* v. *Wyatt, supra.* The evidence, considered in the light most favorable to the decision of the trial court, discloses that there is more than mere speed involved from which negligence might have been inferred by the trier of fact as to Penn Central. Such existing conditions and surrounding circumstances, considered in the light most favorable to the decision of the trial court, may be summarized as follows:

1.  The accident in question occurred at the main entrance to the Midwest Steel Plant in Portage, Indiana at a time when traffic was particularly heavy at the crossing due to the fact that it was shift time.

2.  Both the engineer and fireman of the Penn Central train were familiar with this particular crossing and had been through it several times prior to the date of the accident.

3.  The fireman of the Penn Central train, Mr. Carothers admitted that he knew that this was a very busy crossing at that particular time of the day and that he possessed this knowledge as the train was operating at a speed of 75 m.p.h. and approaching the big curve immediately to the west of the crossing in question and as it passed through the curve heading towards the crossing in question.

4.  The curve is a sharp right-hand curve and a train traveling in an easterly direction approaching the crossing does not come out of the curve until it is approximately 1,000 feet west of the crossing.

5. The testimony given by Penn Central's own expert, Mr. Paden, established that the particular crossing in question would be a dangerous crossing if the flashers and signals shown in Exhibit 3 were activated by a Penn Central train. It was the uncontradicted evidence as established by the testimony of both the plaintiff and the independent witness, Page, that the flashers and signals shown in Exhibit 3 were operating at the time and place of the accident in question.

6. That at some time after January 23, 1968, the date of the accident in question, a computer system was put in to alleviate the problem of trapping vehicles in between the two sets of tracks and this computer system caused a change in the tripping system causing the Penn Central lights to have a different sequence.

7. A death occurred at the same crossing under the same circumstances as the case at bar.

8. The Penn Central employee admitted that there was nothing preventing the Penn Central employees who were operating the train to operate it at a slower speed as it was approaching the crossing in question at the time and place of the accident in question, and further that subsequent to the date of the accident in question the Penn Central trains are traveling at a lower speed at the crossing where the accident occurred in the case at bar.

As to the issue of proximate cause in *New York Central R. R. Co.* v. *Cavinder* (1965), 141 Ind. App. 42, 211 N. E. 2d 502, 508, the court stated:

"The issue of proximate cause, like negligence, is for the jury where its determination depends on a state of facts from which different minds might reasonably draw different inferences or conclusions, but where the facts are undisputed and where only a single inference or conclusion can be drawn therefrom, proximate cause is a matter of law to be determined by the court. In general questions of proximate cause are for the court only in plain and undisputable cases, and if there is any reasonable doubt as to proximate cause, it is a question of fact to be determined by the jury. Baltimore & Ohio R. Co. v. Patrick, Admtrx. (1960), 131 Ind. App. 105, 177, 166 N. E. 2d 654 (Transfer denied) ; Kempf v. Himsel (1951), 121 Ind. App. 488, 497, 98 N. E. 2d 200 (Transfer denied) ; 21 Ind. Law Encyc., Negligence, § 204, pp. 428-429."

Thus, the issue of proximate cause in this case was properly submitted to the jury under instructions to which no objections were made.

Although not cited by either party, *Chicago, Indianapolis & Louisville R. Co.* v. *Carter* (1971), 149 Ind. App. 649, 274 N. E. 2d 537, an opinion by Chief Justice Hoffman, contains the most recent relevant statement in regard to the issues of excessive speed, duty at private crossings, proximate cause, and contributory negligence. That recent case gives strong support to the decision that we have reached here.

Having determined that the evidence in this case is sufficient to support an inference of negligence on the part of Penn Central with reference to the operation of the train here in question, we have really decided all that is necessary to affirm the decision of the trial court. However, a third issue has been raised and we deem it a proper exercise of our function to deal with it.

### III.

Penn Central asserts that there was no evidence from which negligence can be inferred in connection with the installation of the coordinated signal system at this crossing. As a part of its argument under this heading Penn Central lays great stress on the fact that the jury by its verdict exonerated South Shore from liability in regard to the installation of such coordinated signal system. South Shore has filed a brief in which it takes direct issue with Penn Central on the latter's contention that the finding in favor of South Shore exonerating it from liability in regard to the installation of the automatic signals at this crossing compels a similar finding for Penn Central. South Shore emphasizes that under the undisputed evidence that the crossing and the warning system were constructed under a tripartite agreement between the legal predecessor of Penn Central, South Shore and Midwest Steel. It also emphasizes that there were activator circuits on the Penn Central tracks which would activate the lights

on the South Shore tracks. The only part of the installation that was common between the two railroads was the interconnection device which affected the operations of South Shore warning lights and Penn Central warning lights respectively. The jury could have logically found under the evidence that part of the installation of warning signals on the Penn Central tracks was improper and negligent. There is undisputed evidence, the admission to which is not here contested, that subsequent to the date of the collision in this case the system of lights on the Penn Central tracks was changed. The evidence further shows that this change in the tripping system gave the Penn Central lights a different sequence. The position of South Shore is well taken as to this issue.

Under this heading the only issue is whether, in light of exoneration of South Shore, there was sufficient evidence to infer that Penn Central was independently negligent in the installation of the signals. This court and our Supreme Court have consistently held that we will not weigh the evidence if there is any evidence or reasonable inference which may be drawn from the evidence to support the verdict and the findings of the jury. See *Deming Hotel Co.* v. *Prox* (1968) 142 Ind. App. 603, 236 N. E. 2d 631; *Getz* v. *Central National Bank of Greencastle* (1970), 147 Ind. App. 356, 261 N. E. 2d 81; and *J. I. Case Co.* v. *Sandefur* (1964), 245 Ind. 213, 197 N. E. 2d 519.

The evidence established that at some time after January 23, 1968, the date of the collision here in question, a computer system was installed and the system of lights on the New York Central tracks was changed. We should emphasize that the admission of this evidence is not in any way contested in this appeal. The computer system was put in to alleviate the problem of trapping vehicles in between the two sets of tracks. The evidence as to the computer system went in without objection from witnesses of Penn Central and was uncontradicted. Certainly, this evidence together with the evidence of all of the other evidence relating to this crossing

is susceptible to more than one inference. Such evidence taken in the total factual context of this case was a proper basis on which the jury could find that Penn Central was negligent in the installation of the crossing protection equipment as it existed on the date of the collision here in question.

As a footnote to this issue it might be emphasized that Penn Central at no time objected to the forms of verdicts submitted to the parties after the trial of this case and prior to the court's instructions to the jury and the submission of this case to the jury for decision. The forms of verdict were such that the jury could find for the plaintiff and against both defendants or against one or the other defendant, which the jury did in this instance, finding for the defendant, South Shore, and against the defendant, Penn Central.

This case was tried to the merits before a jury and a competent and experienced trial judge. We find that justice was done in it.

Therefore, the decision of the trial court should be and hereby is affirmed.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported in 288 N. E. 2d 263.