GETZ *v.* CENTRAL NATIONAL BANK ET AL.

[No. 469A65. Filed August 11, 1970. Rehearing denied September 28, 1970. Transfer denied February 1, 1971.]

*Alan H. Lobley, Ice Miller Donadio & Ryan,* of counsel, of Indianapolis, for appellants.

*John A. Kendall, Kendall, Stevenson & Lewis,* of Danville, *Jerry P. Belknap, Barnes, Hickam, Pantzer & Boyd,* of counsel, of Indianapolis, for appellee, Central National Bank of Greencastle.

HOFFMAN, P.J.—Plaintiffs-appellants appeal from a judgment entered by the trial court for one of the defendants, Central National Bank of Greencastle, on its counterclaim in plaintiffs' action for declaratory judgment.

The issue presented by this appeal is as follows: Does a bank which loans money to persons for investment in a cattle feeding corporation, and then acts as escrow agent for income and disbursements to the corporation and the investors, become an "underwriter" and participant in the sale of an investment contract so as to subject that bank to Federal and State securities regulations?

The facts of this case are as follows:

Appellee, National Food Producers, Inc. (NFP), an Indiana corporation, was in the business of cattle feeding. NFP promoted the sale of cattle, either by the head or by undivided share, to investors which were then fed-out by NFP and sold, the profits to be pro rated among the investors. NFP charged the investors a daily rate per head, not including the feed, which was deducted from the gross proceeds of the sales of the cattle.

Appellants, residents of Iowa, entered into an investment contract with NFP for the purchase of an undivided one-fourth share of four hundred cattle to be fed-out and sold by NFP. Appellee, Central National Bank of Greencastle, Indiana (Bank), had agreed to make loans to qualified investors in NFP's operation and to serve as escrow agent for the collection and payment of funds to the parties to the contract. The Bank accepted a note from appellants in the amount of $28,005.25, and the cash was advanced to NFP. There was no registration of anything, by anyone, in accordance with the applicable securities laws.

At the time of the sale, the cattle purchased by appellants lost money and the Bank requested payment on the balance due on the note in the amount of $7,321.80.

Appellants then filed this action for a declaratory judgment against NFP and the Bank, seeking a determination of their right to rescind their agreements with both for an alleged violation of the Federal and State Securities Acts, *i.e.*, failure to register.

Appellee-Bank filed a counterclaim on the note and appellee-NFP filed a counterclaim for the balance due under the contract. Pursuant to a stipulation of the parties, the cause was submitted on the counterclaims, the complaint for declaratory judgment deemed to be an affirmative defense to both counterclaims.

The trial court, without the intervention of a jury, entered judgment against NFP on its counterclaim and in favor of appellee-Bank on its counterclaim. Further, the court entered judgment in favor of the appellants and against NFP in the amount of the balance due on the contract. The court rescinded the cattle feeding agreement between appellants and NFP.

Appellants sole assignment of error is the overruling of their motion for a new trial, specifically as set out on page 1 of appellants' reply brief, as follows:

"Appellants have, however, now amended their brief pursuant to Rule 2-20 to show that the Motion for New Trial in fact asserted that the trial court erred in its Conclusions of Law #8 and #9 and that the only error asserted on appeal is the trial court's error in these Conclusions of Law."

The trial court's Conclusions of Law Nos. 8 and 9 are as follows:

"8. Defendant Bank was neither an issuer nor an underwriter of any security insofar as the transactions herein considered are concerned and said defendant therefore had no legal obligation to file or cause to be filed a registration statement concerning the cattle feeding agreement herein.

"9. Plaintiffs' promissory note to defendant Bank is neither void nor voidable and said Bank is entitled to enforce and collect the same from and against plaintiffs in accordance with its terms as follows:

| | |
|---|---|
| $ 7,321.80 | principal; |
| 972.13 | interest to and including December 13, 1968, date herein; |
| 1,500.00 | attorney fees. |
| $ 9,793.93 | Total." |

Stated precisely, the question raised by this appeal is: Did the trial court err in concluding that the Bank was not an "underwriter" of the investment contract between appellants and NFP?

The word "underwriter", when used in connection with securities regulations, and specifically in the registration of securities, takes on a different meaning than when the word is used by laymen or in different areas of the law. "Underwriter" is not defined in the Indiana Securities law applicable to this case, but it is defined in the Federal Securities Act of 1933. Section 77(b) (11) of 15 U.S.C. is as follows:

"(11)   The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, *or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking;* but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term 'issuer' shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer."

(May 27, 1933, c. 38, Title I, § 2, 48 Stat. 74; June 6, 1934, c. 404, Title II, § 201(a), (b), (c), 48 Stat. 905; Aug. 10, 1954, c. 667, Title I, §§ 1-4, 68 Stat. 683.) (Emphasis added.)

Appellants allege that the note is voidable because the Bank is within the language of Acts 1937, ch. 120, § 19, p. 656, Ind. Stat. Anno., § 25-847, Burns' 1960 Repl., which, in part, is as follows:

"Sales voidable by purchaser.—Every sale or contract for sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every officer, director or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller of the securities sold or of the contract made for the full amount paid by such purchaser, together, with all taxable court costs and reasonable attorney's fees in any action or tender under this section: * * *

"(a) In case such securities consist of interest-bearing obligations at the same rate as provided in such obligations; and

"(b) In case such securities consist of other than interest-bearing obligations at the rate of six per cent [6%] per annum; less in every case the amount of any income from said securities that may have been received by such purchaser."

However, this action arose in 1966 and § 25-847, *supra,* as well as §§ 25-829—25-853 were repealed by Acts 1961, ch. 333, § 501, *et seq.* Section 25-847, *supra,* was replaced by § 25-873 (Burns' Ind. Stat. Ann., 1969 Cum. Supp.) which has been amended by Acts 1967, ch. 255, § 14, p. 694; Acts 1969, ch. 190, § 3, p. 541.

The applicable statute (Acts 1961, ch. 333, § 507) is, however, not as far-reaching as the section cited by appellants.

In view of the fact that appellants cannot prevail through the use of either statutory provision, we will only discuss the points raised in their brief.

Appellants' argument can probably best be stated in their own words. We quote from appellants' brief at page 31, as follows:

"The Central National Bank of Greencastle in this case, if it was not actually involved in the sale of the investment contracts, was at least an underwriter because it participated or had a direct or indirect participation in the sale or distribution of the contracts."

Appellants then cite as controlling the case of *Securities & Exchange Com'n.* v. *Chinese Consol. Benev.*, 120 F. 2d 738 (2d Cir. 1941). In that case the Court of Appeals reversed the District Court and enjoined the defendant from soliciting and receiving funds and transmitting them to China, holding that the non-profit organization acted as an "underwriter" within the terms of the Federal Securities Act of 1933. The activities in which the Chinese Consolidated Benevolent Association engaged are stated at page 739 of 120 F. 2d, as follows:

"Through mass meetings, advertising in newspapers distributed through the mails, and personal appeals, the committee urged the members of Chinese communities in New York, New Jersey and Connecticut to purchase the Chinese government bonds referred to and offered to accept funds from prospective purchasers for delivery to the Bank of China in New York as agent for the purchasers. At the request of individual purchasers and for their convenience the committee received some $600,000 to be used for acquiring the bonds, and delivered the moneys to the New York agency of the Bank of China, together with written applications by the respective purchasers for the bonds which they desired to buy."

The activities of the Chinese Consolidated Benevolent Association in no way compare with the activities of the Bank in the instant case. This factual difference is shown by the very words of the Second Circuit Court of Appeals:

"Here a series of events were set in motion by the solicitation of offers to buy which culminated in a *distribution that was initiated by the defendant.* We hold that the defendant acted as an underwriter." (Emphasis added.) (*Ibid* at 741.)

Appellants also cite *Holloway et al.* v. *Thompson, et al.*, 112 Ind. App. 229, 42 N. E. 2d 421 (1942). In that case the

co-defendants sold portions of a cemetery to individuals as an investment by making false representations. The owner of the land formed a corporation and then engaged the other defendants to do the actual sales work. Plaintiffs-appellees, an elderly couple from Delphi, Indiana, had invested in burial space for thirty-one bodies. This court held that the sale of the lots was a sale of securities, and because the issuer and its agents failed to register under the Indiana Securities Act, the sale was voidable under § 25-847, *supra*. The facts in *Holloway* are clearly distinguishable from the case at bar, and we fail to see how *Holloway* can be relied upon to find that the actions of the Bank would make it an "underwriter."

It is the law in Indiana that the decision of the trial court is presumed correct and the burden is upon appellant to overcome that presumption. *Souerdike* v. *State*, 231 Ind. 204, 206, 108 N. E. 2d 136 (1952) ; *A.S.C. Corporation* v. *First Nat. Bank, etc.*, 241 Ind. 19, 23, 167 N. E. 2d 460 (1960).

It is also the law in Indiana that when appellant alleges that the decision of the trial court is contrary to law, we may consider only the evidence most favorable to appellee, together with any reasonable inferences which may be drawn therefrom; and it is only when there is no conflict in the evidence and it can lead only to a conclusion contrary to the one which the trial court reached will the decision be reversed. *Pokraka* v. *Lummus Co.*, 230 Ind. 523, 529, 532, 104 N. E. 2d 669 (1952) ; *Souerdike* v. *State, supra; A.S.C. Corporation* v. *First Nat. Bank, etc., supra.*

The pertinent findings of facts are as follows:

The Bank investigated appellants' credit before issuing the note. The note was a separate agreement from the contract with NFP. The Bank was not a party to, and had no interest in, the cattle feeding agreement except to the extent that in making loans to participants in the program the Bank demanded assurance that the cattle which were

security for the loan would be competently cared for. The Bank did not solicit either plaintiff to participate in the venture involved in this action or any cattle feeding venture. As a lender of money the Bank performed only a normal banking function. The Bank neither expected nor realized any profit or other consideration out of the transaction other than the normal interest charges on its loan. The Bank had no direct or indirect control over NFP. The Bank acted as escrow agent. The Bank was not, in fact, indispensable or necessary to the transaction, since other sources of credit were available to participants wishing credit, and the making of a bank loan was not a necessary part of the cattle feeding agreement. The actions of the Bank did not constitute direct or indirect participation in the distribution of the cattle feeding agreement.

The evidence contained in the record, and all reasonable inferences drawn therefrom, support these findings of fact. We are bound by these ultimate facts. *Miller, etc.* v. *Ortman, etc., et al.*, 235 Ind. 641, 665, 136 N. E. 2d 17 (1956) ; *Carpenter et ux.* v. *Wisniewski, et ux.*, 139 Ind. App. 325, 332, 215 N. E. 2d 882 (1966), (Transfer denied) ; *State Board of Tax Com.* v. *Wright,* 139 Ind. App. 370, 215 N. E. 2d 57 (1966), (Transfer denied).

We cannot say that these findings lead to only one conclusion—that being contrary to the one reached by the trial court. Therefore, the trial court did not err in its Conclusions of Law Nos. 8 and 9.

In affirming the judgment of the trial court we hold that the actions of the Bank did not come within the applicable Federal and Indiana Securities Acts.

For the reasons hereinabove stated the judgment of the trial court must be affirmed.

Judgment affirmed.

Pfaff, Sharp and White, JJ., concur.

NOTE.—Reported in 261 N. E. 2d 81.