441 F.Supp. 62 (1977)
In re FALSTAFF BREWING CORPORATION ANTITRUST LITIGATION.
MDL No. 263. Nos. 76-639 C (2), 77-742 C (2) to 77-744 C (2).
United States District Court, E. D. Missouri, E. D.
October 11, 1977.
As Amended February 7, 1978.
*63 *64 Bruce B. Sousa, James F. Boccardo, Boccardo, Blum, Lull, Niland & Bell, San Jose, Cal., Joseph L. Alioto, San Francisco, Cal., Stuart Symington, Jr., Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., for plaintiff.
Kathianne Knaup, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for Boatmen's Nat. Bank of St. Louis.
John F. Weeks, II, William P. Stahl, New Orleans, La., for First Nat. Bank of Commerce.
John H. Blish, Edwards & Angell, Providence, R. I., Kathianne Knaup, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for Industrial Nat. Bank of Rhode Island.
Edward Mullinix and Michael R. Gardner, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for First Pennsylvania Banking & Trust Co.

MEMORANDUM
WANGELIN, District Judge.
These actions arose out of the 1975 acquisition by plaintiff Paul Kalmanovitz of a substantial amount of Falstaff Brewing Corporation's stock. Plaintiff has filed antitrust and securities actions against four banks and two insurance companies. Several former officers and directors of Falstaff and the accounting firm of Haskins & Sells are also defendants. Eight separate actions were transferred by the Judicial Panel on Multi-district Litigation to this Court for consolidate pre-trial proceedings. Two actions which were pending in this district are also part of this litigation.
Defendants have moved to dismiss in several of these actions, referred to as the securities cases. Motions are pending in Cases No. 76-639 C (2), 77-742 C (2), 77-743 C (2) and 77-744 C (2). A motion has also been filed in 77-611 C (2), also a securities action, but has not yet been submitted.
The motions to dismiss are aimed at the sufficiency of the complaint. Thus, the allegations of the complaint set out below will be considered true. About fifteen years ago Falstaff began negotiating long-term, low interest loans with the two insurance company defendants. Some five years ago Falstaff received additional loans at higher rates of interest from the bank defendants.
Late in 1974 these debts totalled over thirty one million dollars ($31,000,000). In the two years preceding that time the financial position of Falstaff had slipped drastically. Falstaff was unable to comply with conditions in the loan agreements requiring, among other things, adequate *65 working capital, a maximum debt, and a minimum equity. Thus, Falstaff was in default on the loans while continuing to make payments.
Kalmanovitz charges that during late 1974 the lenders become involved with the day to day operation of Falstaff in order to monitor its financial condition. These allegations are made on information and belief and specify that defendants required Falstaff to:
(1) replace acting officers and directors;
(2) implement certain policies;
(3) revise its debt structure;
(4) obtain an equity investor;
(5) give additional security; and
(6) obtain approval before acquiring or selling capital assets.
This control was exerted by the lenders' threat to declare a default and accelerate payment on the loans.
Early in 1975, Falstaff entered into a "collateral agency agreement" with the lenders. Plaintiff alleges that the lenders forced Falstaff to accept this agreement in return for a waiver of default. This agreement named one defendant as an agent for the other lenders. Payment were to be distributed pro rata to all lenders. This agreement had the effect of prohibiting Kalmanovitz, who later acquired Falstaff, from paying off high interest loans first.
The next occurrence in the alleged sequence of events was a conspiracy by all defendants to prepare and certify materially false and misleading financial statements. This allegation is also made on information and belief. Defendant lenders then forced Falstaff to give them security interests in all corporation property except accounts receivable and inventory. Both the collateral agency agreement and the security agreement were dated February 5, 1975.
Plaintiff charges that this entire course of dealing was intended to give the defendants enforceable security interests in Falstaff property and then force Falstaff to find an equity investor. Various meetings were held where Kalmanovitz and officers of Falstaff discussed a possible investment. During these negotiations certain misrepresentations were made by officers of Falstaff. Kalmanovitz was told, e. g., that the lenders had waived any default by Falstaff pending his investment.
Also, Kalmanovitz stated specifically that he intended to use his equity investment to pay off the short term, high interest loans. Falstaff's officers did not inform Kalmanovitz of the collateral agency agreement or the security agreements. The lender defendants are charged with knowledge of the misrepresentation to Kalmanovitz and a failure to inform him of these agreements.
Summarizing, the complaint charges Falstaff officers with making material misrepresentations and omissions in connection with the sale of preferred stock to plaintiff. Defendants prompted this wrong by demanding that Falstaff find an equity investor. They were aware of the wrong and took no steps to correct it. There is at least one allegation in the complaint, made on information and belief, that defendant lenders intended to defraud plaintiff Kalmanovitz.
This factual background forms the basis for plaintiff's conclusion that defendants have violated §§ 15 and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77o and 77q, and §§ 10(b) and 18(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78r. Defendants are charged as conspirators, aiders and abettors and controlling persons under § 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t. Counts II and III of the complaint, incorporating the facts set out above, charge defendants with negligent misrepresentation and common law fraud.
Various parts of this complaint have been considered previously. In Case No. 76-639 C (2), Judge John F. Nangle dismissed plaintiff's first complaint with leave to refile for failure to comply with Rule 9(b) of *66 the Federal Rules of Civil Procedure. The complaint in Case No. 77-742 C (2) makes essentially the same allegations as that complaint. The complaint in No. 76-639 C (2) was amended and it is now nearly identical to those filed in 77-743 C (2) and 77-744 C (2). At this time the Court must consider defendants' renewed Rule 9(b) claim and the merits of plaintiff's case on the pleadings.
One additional problem is worth noting. On November 4, 1976, this Court granted partial summary judgment to defendant in No. 76-120 C (2). That suit is one of the antitrust actions, but also presented a common law fraud claim. After considering affidavits, the Court held that plaintiff Paul Kalmanovitz had the opportunity to discover the existence of outstanding security interests but made no reasonable investigation to do so. Also, plaintiff became aware of the security interests before shareholder approval of the transaction yet did not act to protect himself.[1] In addition to the arguments that the complaints state no cause of action or are insufficient under Rule 9(b) of the Federal Rules of Civil Procedure, defendant argues that this summary judgment must severely limit plaintiff's securities claims.
The effect of the summary judgment, if left undisturbed when the Court reconsiders the antitrust motions, will be to estop plaintiff from alleging or seeking to prove concealment of the security agreements, or from asserting that he was unable to discover their existence. Any estoppel is limited to the express findings essential to granting defendant's motion on the common law fraud count. It does not dispose of the federal securities' claims which involve several additional allegations.
The question has been raised as to whether collateral estoppel can arise from a summary judgment based upon pleadings and affidavits. This Court believes that it can. The granting of a motion for summary judgment is, in the sense requisite for raising an estoppel, a final judgment on the merits. Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 517 F.2d 110 (5th Cir. 1975), cert. denied, 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976); Hubicki v. ACF Industries, Inc., 484 F.2d 519 (3rd Cir. 1973).
Where the facts so warrant, collateral estoppel as to these issues will be available to other defendants as against plaintiff Kalmanovitz upon timely amendment or motion. The doctrine of mutuality, which might prevent this effect, has recently been criticized by the Supreme Court in Blonder-Tongue Laboratories v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and is no longer recognized in a number of circuits. See Butler v. Stover Bros. Trucking Co., 546 F.2d 544 (7th Cir. 1977); Abramson v. Pennwood Investment Corp., 392 F.2d 759 (2d Cir. 1968); Rachal v. Hill, 435 F.2d 59 (5th Cir. 1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971).
This Circuit has not clearly abandoned the mutuality requirement. See United States v. Brown, 547 F.2d 438 (8th Cir. 1977), cert. denied, 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784; St. Louis Typographical Union No. 8 v. Herald Company, 402 F.2d 553 (8th Cir. 1968). Nonetheless, the requirement warrants suspension in the context of these cases.
The several defendants have a strong identity of interests and would have been co-defendants were it not for the venue requirements of the National Bank Act. Moreover, there is no substantial unfairness *67 to the plaintiff in allowing the several defendants to avail themselves of effects of a prior judgment where the factual issues are identical and grow out of the same transaction. Even in applying the mutuality doctrine, the Court in St. Louis Typographical Union No. 8, supra, at 556, noted that identity of parties is a matter of substance, not form. Thus, plaintiff's complaint may be limited by the effect of this judgment.
A basic policy question is presented by these motions: How far can liability for violations of securities laws be extended? Plaintiff has alleged little, if any, direct contact between the bank and insurance company defendants and himself. The primary violation alleged is that officers of Falstaff, and thus Falstaff itself, made material misrepresentations and omissions. The pleadings must be adequate to support a legal theory to extend liability to parties whose only formal relationship to Falstaff was that of creditor.
Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o, imposes third-party liability upon persons who "control" those who violate §§ 11 or 12 of that Act, 15 U.S.C. §§ 77k and 77l. Plaintiff has not alleged the violation of §§ 11 or 12 by anyone, thus liability may not be extended to defendants on this theory. That part of the complaint will be dismissed.
Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q provides:
It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly 
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.
There is some question whether § 17(a) provides a private right of action. See Blue Chip Stamps v. Manor Drug Store, 421 U.S. 723, 733, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The rule in this Circuit, however, is that such a right exists only if a violation of § 12 is shown. Greater Iowa Corporation v. McLendon, 378 F.2d 783, 790 (8th Cir. 1967). As stated before, there is no allegation that defendants violated § 12 and thus plaintiff's § 17(a) claim will be dismissed.
Section 18(a) of the Securities Exchange Act of 1934 is directed at filings with the Securities Exchange Commission. Although the complaint mentions several documents which contained material misrepresentations and omissions, the description does not indicate that they were filed "pursuant to" the Act. The Northern District of California citing Heit v. Weitzen, 402 F.2d 909 (2d Cir. 1968) reached the same conclusion in Case No. C76-106CFP, now 77-611 C (2). Thus plaintiff's § 18(a) claims will be dismissed.
Plaintiff's claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10(b)-5, 17 C.F.R. § 240.10(b)-5 (1976), do not suffer from the same defect. Rule 10(b)-5 provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) to employ any device, scheme or artifice to defraud,
(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, *68 in connection with the purchase or sale of any security.
The Federal Courts have long held that a violation of this Rule gives rise to an implied civil right of action.[2]Kardon v. National Gypsum, 69 F.Supp. 512 (E.D.Pa. 1946). Despite a more narrow construction in recent years, e. g., Blue Chip Stamps v. Manor Drug Co., 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), Rule 10b-5 is a formidable weapon in policing securities transactions. The Rule's basic requirement is still full and fair disclosure. Santa Fe Industries v. Green, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).
Thus allegations that officers of Falstaff mislead Kalmanovitz state a violation by them and by Falstaff. See Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). The allegations of scienter, Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed. 668 (1976), and reliance, Affiliated Ute Citizens, supra, 406 U.S. at 153, 92 S.Ct. 1456, are sufficient. Finally, contrary to defendants' argument, the allegation that the stock purchased was worth less than was paid for it is a proper claim of damages. Myzel v. Fields, 386 F.2d 718, 748 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).
Having decided that a primary violation of Rule 10b-5 has been alleged, the Court must consider the lenders' possible liability. The law of secondary liability in 10b-5 cases is not settled. See generally, Ruder, Multiple Defendants in Securities Law Fraud Cases, 120 Penn.L.Rev. 597 (1972). Much of the debate has focused on whether agency principles can supplement statutory liability under § 20(a) of the Securities Exchange Act of 1934. Gordon v. Burr, supra, 366 F.Supp. at 168. This problem is not raised by the complaint, thus the discussion may be confined to § 20(a).
Section 20(a) provides:
Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
15 U.S.C. § 78t. The section was probably intended to apply to relationships like that of a broker and a brokerage company or a corporation and its controlling shareholder. However, by its terms it may apply to an entity, such as a lender, that assumes a controlling status.
The allegation that the lender defendants controlled the daily affairs of Falstaff, although possibly difficult to prove, is surely sufficient under § 20(a). The Court reaches this conclusion in spite of its doubts that the lenders' efforts to secure their loans through various commercially acceptable methods would make them controlling persons. A scienter requirement, possibly co-extensive with that set out in Ernst & Ernst, supra, is certainly required. However, it too is sufficiently alleged.
This leaves for consideration plaintiff's claims of liability for conspiracy and aiding and abetting. There is some authority for extending liability under these theories in what is essentially a tort action. Woodward v. Metro Bank of Dallas, 522 F.2d 84 (5th Cir. 1975); Ruder, supra, at 620.
The elements of such an action have been described as follows:
Without meaning to set forth an inflexible definition of aiding and abetting, we find that a person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation. *69 S.E.C. v. Coffey, 493 F.2d 1304, 1316 (6th Cir. 1974), cert. denied, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). The allegations of this complaint are broad enough to encompass this theory.[3]
Although this case is one of omission, at least as far as the lenders are concerned, the same theory can apply. As stated before, the defendants are protected from all encompassing liability by the strict scienter requirements of Ernst & Ernst, supra. The result in Woodward, supra, cited by defendants, is not contrary. That court did not reject an aider and abettor theory nor adopt one, it merely held that the facts were insufficient to support one.
The final two counts of the complaint are based upon common law theories. Without commenting on their validity it is worth noting that they are no more broad than the 10b-5 claim, at least under this Court's interpretation of the law. They will not be dismissed at this time.[4]
This leaves for consideration defendants' Rule 9(b) objections. An examination of the complaint shows that it is adequate, at least in terms of specificity. However, the critical elements of the complaint, i. e., defendants' controlling person status, the elements of the 10b-5 claim, and aider and abettor liability, are still made on information and belief. This is simply not permissible under Rule 9(b).
When the facts relevant to a fraud claim are primarily in the hands of a third party, this rule may be relaxed. However, plaintiff's reference to documents is inadequate. Rule 9(b) requires plaintiff to list the facts that form his information and belief, not the source of those facts. Plaintiff may not start with the knowledge that a collateral agency agreement and a security agreement were made, and that he was not aware of them, and allege a scheme to defraud on information and belief. Plaintiff will be ordered to replead again.[5]
NOTES
[1] This finding is at odds, at least from a theoretical standpoint, with that of the Northern District of California in Case No. C76-106CFP, now 76-611 C (2). There it was held that the March 10, 1975 agreement between Kalmanovitz and Falstaff was a binding contract, thus post March 10th statements could not be the basis of fraud claims. This Court held that Kalmanovitz became aware of the security interests after March 10th. This Court's ruling that Kalmanovitz could have acted at that time is inconsistent with the ruling of the California court.
[2] For a general discussion of the elements of a 10b-5 action see Gordon v. Burr, 366 F.Supp. 156 (S.D.N.Y.1973), aff'd in part, 506 F.2d 1080 (2d Cir. 1974).
[3] The allegations of a conspiracy add nothing to the complaint. A conspiracy is an agreement to violate the Rule while 10b-5 actions are concerned with actual violations. The aider and abettor theory encompasses successful conspiracies.
[4] The allegation of negligent misrepresentation is of questionable sufficiency. Absent some positive representation, it is unclear why the lenders would have a duty to make disclosures to Kalmanovitz concerning the financial affairs of Falstaff. Certainly, more is required than a debtor-creditor relationship between Falstaff and the defendants. See Woodward v. Metro Bank of Dallas, supra. Plaintiff should seriously consider dropping these allegations from his complaint when it is refiled.
[5] This is not an invitation for plaintiff to file a more detailed complaint. It does allege fraud in specific terms. Rule 8(a) of the Federal Rules of Civil Procedure still applies in fraud cases, and must be read with Rule 9(b). A. T. Brod v. Perlow, 375 F.2d 393, 398 (2d Cir. 1967).