**Affirmed and Opinion Filed March 18, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01171-CV

### SEIB FAMILY GP, LLC, GENERAL PARTNER OF SEIB FAMILY, LP Appellant
### V.
### BANK OF THE OZARKS, Appellee

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-04057**

## MEMORANDUM OPINION
Before Justices Moseley, Francis, and Lang
Opinion by Justice Francis

Seib Family GP, LLC, general partner of Seib Family, LP, appeals the trial court's take-nothing summary judgment on its claims against Bank of the Ozarks involving the purchase of a limited partnership. Appellant contends the trial court erred by (1) granting summary judgment when fact issues exist and (2) refusing to continue the summary judgment hearing. We affirm.

This case involves the 2009 purchase of 318 Cadiz, L.P. by Seib Family, L.P., and Richard Seib. The primary asset of 318 Cadiz, L.P., was an approximately sixty-acre tract of land in the warehouse district adjacent to the Trinity River levee in Dallas. At the time of the transaction, the partnership interests in 318 Cadiz, L.P., were owned, directly or indirectly, by 318 Cadiz Holding L.P., a wholly owned subsidiary of JPI Multifamily Investments. In addition,

the Bank held a $25,480,000 promissory note used to finance the purchase of the property by 318 Cadiz, L.P. in 2008. The note was secured by a deed of trust on the property.

Summary judgment evidence showed the note went into default in 2009, and Richard Seib learned from a third party that the property was available from JPI. Richard contacted the Bank, which furnished documents it had concerning the property. The documents included 2007 environmental and appraisal reports that were prepared by third parties. Both sides agree these reports contained statements that the property was protected from flood by the Trinity River levee. A cover letter to the environmental report, however, stated the report would need to be updated for transactions taking place more than 180 days after September 7, 2007. At the time the documents were provided to Richard, the Bank also furnished a memorandum regarding the purchase of the note. In the memorandum, the Bank specifically stated it could "only sell its security interest in the Note, not the fee ownership in any property described herein."

Richard did not pursue a purchase of the Bank's note; rather, he obtained JPI's contact information from the Bank and chose to acquire the partnership interests in 318 Cadiz, L.P. Effective April 2, 2009, Seib Family, L.P. and Richard Seib, as purchasers, entered into a "Securities Purchase Agreement" with 318 Cadiz Holding, L.P., as seller, to acquire the limited partnership interests in 318 Cadiz, L.P. and the membership interests in the LP's sole general partners, 318 Cadiz Holding GP LLC. The Bank was not a party or signatory to the agreement.

The Bank did, however, enter into a "Consent to Transfer" agreement in which it consented to the transfer of interests in 318 Cadiz, L.P. to Seib Family, L.P. and Richard Seib. In the agreement, the Bank was identified as the lender; 318 Cadiz, L.P. was identified as borrower; 318 Cadiz Holding, L.P. was identified as seller; and the Seib parties were identified as "purchaser." In the agreement, the Seib parties acknowledged they were "sophisticated real estate developer[s] and/or investor[s]" and had "conducted [their] own financial analysis and

other due diligence respected the Interests, the Property, the Loan, and the Loan Documents." Further, the Bank stated it made "no representation or warranty of any kind to [the Seib parties] in connection with any financial projections, analyses or other reports provided to [the Seib parties] by [the Bank] regarding the Interests, the Property, the Loan, and the Loan Documents, any such financial projections, analyses or other reports having been provided for discussion purposes only."

Two years after acquiring the limited partnership, appellant sued the Bank and two JPI parties, alleging they knew the stability and fitness of the Trinity River levee was "in jeopardy" and was "being decertified" by the United States Corps of Engineers but failed to inform appellant of the existence of the "problems or potential problems." Without the levee protecting the property, appellant asserted that nothing could be built on the property "since it is otherwise in the flood plain" and the value is "less than zero" because "extensive necessary environmental remediation work far exceeds its value as farm and ranch land." Appellant alleged causes of action for violations of the Texas Securities Act, fraudulent inducement, and statutory fraud.

The Bank filed an answer in which it generally denied the allegations, raised affirmative defenses, and sought sanctions. The Bank also filed a combined traditional and no-evidence motion for summary judgment, which the trial court granted without stating the grounds. Appellant nonsuited its claims against the JPI defendants, and the Bank nonsuited its counterclaim against appellant, making the judgment final.

During oral argument, appellant represented its appeal was directed only at the claim for the Texas Securities Act violation. Therefore, we limit our discussion to appellant's second issue in which it asserts there are fact issues on its TSA claim. Appellant argues the JPI defendants were aware of problems with the levees before closing, and the Bank, "as a person who marketed

the security and controlled the owner, a JPI Defendant," is charged with the knowledge the seller had when the transaction closed.

We begin with the Bank's traditional motion for summary judgment. To prevail on a traditional summary judgment motion, a movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Id*. When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id*.

The TSA establishes both "primary" and "secondary" liability for securities violations. The term "security" includes any limited partner interest in a limited partnership. TEX. REV. CIV. STAT. ANN. art. 581-4A (West 2010). "Primary" liability arises when a person offers to sell or buy a security "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 839 (Tex. 2005). In contrast, secondary liability is derivative liability for another person's securities violation either because he is a "control person" or because he "aided" the seller or buyer of the securities. *Id*.

It is unclear whether appellant is asserting direct seller liability on appeal. Assuming appellant has, the Bank presented evidence that the transaction at issue – the acquisition of partnership interests in 318 Cadiz, L.P. – was completed through a Securities Purchase Agreement. The parties to the agreement were 318 Cadiz Holding, L.P., as seller, and Seib Family, L.P. and Richard Seib, as purchaser. The Bank was neither a party nor signatory to the

–4–

agreement. Further, in the consent transfer, the Bank was identified as "lender." This evidence conclusively establishes that the Bank was not a seller of the security.

To the extent appellant suggests *Brown v. Cole*, 291 S.W.2d 704 (Tex. 1956), applies to this case and mandates a different result, we disagree. In *Cole*, the supreme court defined the term "seller" broadly, making liable to an aggrieved buyer any person who served as a "link in the chain of the selling process." 291 S.W.2d at 708. The TSA, however, has been significantly amended since that case was decided and has incorporated liability for "control persons and aiders" into a new section. The comment pertinent to that section notes that "*Brown v. Cole* should have no application to the new law, since § 33F provides quite specifically who, besides a person who buys or sells, is liable, and the criteria for such liability." TEX. REV. CIV. STAT. ANN. art. 581-33F cmt. (West 2010).

As for secondary liability, the issue is whether the Bank was a "control person" under the statute. The rationale for control person liability is that a control person is in a position to prevent the violation and may be able to compensate the injured investor when the primary violator is not able to compensate him. TEX. REV. CIV. STAT. ANN. art. 581-33F cmt.; *Barnes v. SWS Fin. Servs.*, *Inc.*, 97 S.W.3d 759, 763 (Tex. App.—Dallas 2003, no pet.). The statute does not define control person; however, control "is used in the same broad sense as in federal securities law." *Barnes*, 97 S.W.3d at 763 (citing TEX. REV. CIV. STAT. ANN. art. 581-33F cmt.). This Court has followed a two-prong test established under federal law: (1) the defendant exercised control over the operation of the corporation in general and (2) the defendant had the power to control the specific transaction or activity upon which the primary violation is predicated. *Darocy v. Abildtrup*, 345 S.W.3d 129, 137 (Tex. App.—Dallas 2011, no pet.); *Barnes*, 97 S.W.3d at 764. Texas courts interpreting this requirement have held only that a major shareholder or director is a "control person" for purposes of the statute. *Darocy*, 345 S.W.3d at

137 (citing *Frank v. Bear, Stearns & Co.*, 11 S.W.3d 389, 384 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

In its motion for summary judgment, the Bank moved on the ground the summary judgment evidence conclusively showed it did not and could not exercise control over the operation of the JPI defendants in general. As evidence, the Bank presented the affidavit of Dan Thomas, president of the Bank's Real Estate Specialty Group. Thomas attested that (1) no employee of the Bank has served as director or officer or was a major shareholder of any JPI entity; (2) the Bank did not have any ownership interests in any JPI entity; and (3) the only relationship between the Bank and the JPI defendants was that of lender and borrower. This evidence established that the Bank did not exercise control over the operation of any JPI entity in general. *Cf. Seattle-First Nat'l Bank v. Carlstedt*, 678 F. Supp. 1543, 1550 (W.D. Okla. 1987) (stating "fact that a bank is a major lender to a particular company or individual does not establish 'controlling person' status), *citing Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985), *cert. denied*, 474 U.S. 1057 (1986).

On appeal, appellant does not address this prong; rather, it argues it raised a fact issue as to the second prong of the test. Because appellant does not argue or direct this Court to any evidence or law to show the Bank exercised control over the operations of JPI in general as is required by the first prong of the test, we conclude the trial court did not err in granting a take-nothing judgment on appellant's TSA claim. We overrule the second issue.

Having so concluded, we need not address appellant's remaining issues. In its brief, appellant's first issue does nothing more than recite the law relevant to the standard of review on summary judgment. Appellant's third issue complains the trial court erred in granting the no-evidence motion for summary judgment when relevant discovery was ongoing at the time of the hearing. Because we have disposed of this appeal on the basis of the traditional motion for

summary judgment, it is not necessary to address this issue.  Finally, the fourth issue asserts the take-nothing judgment on the fraudulent inducement claim was improper.  As stated previously, appellant's counsel represented the appeal addressed only one issue, the TSA claim.  Regardless, appellant has cited no law in support of his fourth issue, and the failure to do so renders his issue inadequately briefed.  *See* TEX. R. APP. P. 38.1(i).

We affirm the trial court's judgment.

121171F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SEIB FAMILY GP, LLC, GENERAL
PARTNER OF SEIB FAMILY, LP,
Appellant

No. 05-12-01171-CV        V.

BANK OF THE OZARKS, Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-04057.
Opinion delivered by Justice Francis;
Justices Moseley and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee BANK OF THE OZARKS recover its costs of this appeal
from appellant SEIB FAMILY GP, LLC, GENERAL PARTNER OF SEIB FAMILY, LP.

Judgment entered March 18, 2014

/Molly Francis/
MOLLY FRANCIS
JUSTICE